UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AQUA CREATIONS USA INC. and AQUA CREATIONS LTD.,

                     Plaintiffs,

        v.

HILTON HOTELS CORPORATION,

                     Defendant.

**MEMORANDUM OPINION & ORDER**

10 Civ. 246

PAUL G. GARDEPHE, U.S.D.J.:

       In this action, Plaintiffs Aqua Creations USA Inc. and Aqua Creations LTD (collectively, "Aqua") – designers of artistic light fixtures – claim that Defendant Hilton Hotels Corporation ("Hilton") infringed Aqua's copyright in certain lighting fixture designs. Aqua submitted sketches, photographs, price quotes, and other information in response to a July 2007 inquiry from Hilton. Aqua alleges that the parties were unable to agree on price, and that Hilton subsequently had copies made of Aqua's designs and installed them at its San Diego Convention Center. (Second Amended Complaint, ("SAC") ¶ 17) The SAC sets forth claims for copyright infringement under 17 U.S.C. § 411(a) and quantum meruit. (SAC ¶¶ 22-35)

       Hilton has moved to dismiss, arguing that the lighting designs at issue are not copyrightable, and that – as to quantum meruit – Aqua had no reasonable expectation of receiving compensation for its preparatory work in seeking the contract. For the reasons stated below, Hilton's motion to dismiss will be granted.[1]

---

[1] As to the copyright infringement claim, and in the alternative, Hilton moves to strike Aqua's claim for attorneys' fees and statutory and enhanced damages, because the works at issue are not registered. (Def. Br. 19-20)

## BACKGROUND

Aqua Creations USA Inc. is a New York corporation with an office in Manhattan, while Aqua Creations Ltd. is an Israeli company headquartered in Tel Aviv. (SAC ¶¶ 1, 7) Aqua creates sculptural lighting designs that "may be seen in museums, showrooms, interior and lighting design studios, exhibitions, restaurants and hotels all over the world." (SAC ¶¶ 8-9)

In July 2007, Hilton sent Aqua a "request for quote" for the design of overhead lighting in the ballroom of its San Diego Convention Center. (SAC ¶ 12; Ex. A) Hilton's request states that Aqua's quote should be based on its "Stand By" design. (SAC, Ex. A at 4)[2]

In August 2007, Aqua submitted the "Custom Sunsa Pendant Lighting Design" for Hilton's review. (SAC, Ex. A, at 6) According to the SAC, the Custom Sunsa Design is "comprised of a number of lighting fixtures comprising the Stand By Design." (SAC ¶ 12) Aqua quoted a price of $1,056,000 on the following terms: "50% deposit to place an order, Balance due before delivery, Estimated Lead time 3 months from the date the deposit is received." (SAC, ¶ 14, Ex. A, at 6)

After Aqua's initial quote, the parties engaged in price negotiations, while Aqua "produc[ed] amended designs and written specifications." (SAC ¶ 15) Aqua provided several

---

[2] In determining the sufficiency of a complaint, this Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (documents that are "integral" to the complaint may be considered on motion to dismiss); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (court may consider documents plaintiff relied on in framing the complaint). Here, there is no dispute that this Court may take judicial notice of certain documents (Def. Request for Judicial Notice, Att. A, Att. B) relating to Aqua's unsuccessful efforts to obtain copyright registrations for the designs at issue. (Pltf. Br. 12) As discussed below, however, the Court will make an independent determination as to whether Aqua's designs are entitled to copyright protection.

sketches and photographs to Hilton during the negotiations.  (See SAC, Ex. A)  Aqua and Hilton could not reach agreement on price, and Aqua alleges that Hilton "subsequently created, or had created for it, slavish copies of the Stand By and Sunsa Designs that were installed at and are still displayed at the Hilton San Diego Convention Center."  (SAC ¶ 17)

Aqua has a copyright registration for "Aqua Creations Sculptural Lighting and Furniture Collections" (the "'256 Registration"), which includes the Stand By Design.  On December 12, 2005, Aqua received a supplemental registration for the same collection of materials (the '392 Registration'").  (SAC ¶ 18-19)  Aqua acknowledges, however, that "[t]he Copyright Office has informed the parties of its opinion that the Stand By design is not the basis for the allowance of the '256 Registration."  (SAC ¶ 18)

On April 6, 2009, Aqua sought copyright registrations for the Custom Sunsa Pendant Lighting Design and the component Stand By Design that it submitted to Hilton.  (SAC ¶ 20-21)  The Copyright Office denied Aqua's applications on April 14, 2009, finding that the works were "useful articles" that "do[] not contain any separable authorship needed to sustain a claim to copyright."  (Def. Request for Judicial Notice, Att. A at 9; Att. B at 7 (emphasis in original))  On December 23, 2009, the Copyright Office denied Aqua's request for reconsideration.  (Def. Request for Judicial Notice, Att. B, at 18)

Aqua initiated this action on January 13, 2010, and filed its First Amended Complaint on January 22, 2010.  (Dkt. No. 3)  In a March 19, 2010 letter, Hilton requested a pre-motion conference regarding its contemplated motion to dismiss.  Hilton argued that Aqua's First Amended Complaint did not adequately plead that the light fixtures were copyrightable.  (Def. Mar. 19, 2010 Ltr. at 2)  In its letter, Hilton noted that "Aqua fails to identify any separable, non-functional, artistic elements of the designs, as required under the law."  (Id. at 2)  The Court

conducted a pre-motion conference on April 9, 2010, and then gave Aqua leave to file a Second Amended Complaint by April 23, 2010. (Dkt. No. 15)

On April 26, 2010, Aqua filed the SAC. (Dkt. No. 16) Aqua added an allegation stating that its "creative designs in [the Sunsa and Stand By works] are unrelated to, and wholly separable from, the utilitarian and functional aspects of the lamps (i.e., their ability to illuminate)." (SAC ¶ 13) The SAC also alleges that "[t]he copyrightable subject matter in these original works is unrelated to, and physically and/or conceptually separable from, the utilitarian and functional aspects of the works." (SAC ¶ 26) On June 11, 2010, Hilton moved to dismiss the Second Amended Complaint. (Dkt. No. 21)

## DISCUSSION

### I.   LEGAL STANDARD

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled if it merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), or if it does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock &

Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

## II. COPYRIGHT CLAIMS

In the SAC, Aqua seeks, inter alia, damages against Defendant for its alleged infringement of Aqua's designs, an injunction against further infringement, and an order directing the Register of Copyrights "to issue copyright registration certificates for Aqua Creations' Stand By and Sunsa Designs." (SAC, Prayer for Relief) As discussed below, Aqua's copyright infringement claim will be dismissed, because Aqua has not pled facts demonstrating that its lighting designs – which constitute "useful articles" under the Copyright Act – contain creative elements that are physically or conceptually separable from the light fixtures' utilitarian aspects. To the extent that Aqua seeks relief against the Register of Copyrights, its claim must likewise be dismissed, because Aqua has not named the Copyright Office or its employees as defendants in this action.

### A. Infringement Claim

#### 1. Effect of Copyright Office's Rejection of Registration Application

Aqua alleges that Hilton has infringed its copyrights in the Sunsa and Stand By lighting designs. (SAC ¶ 4) "In any suit for copyright infringement, the plaintiff must establish its ownership of a valid copyright, and that the defendant copied the copyrighted work." Computer Assocs. Int'l v. Altai, 982 F.2d 693, 701 (2d Cir. 1992).

A certificate of registration issued by the Copyright Office constitutes "prima facie evidence of the validity of the copyright" in a copyright infringement action. 17 U.S.C. § 410; see also 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.11[A][1] (Matthew Bender, Rev. Ed.). A denial of registration by the Copyright Office, however, does not preclude the bringing of an infringement action. See Nimmer on Copyright § 12.11[B][3].

Where the Copyright Office denies registration, and the unsuccessful applicant subsequently brings an infringement action, courts nonetheless make an independent determination as to copyrightability. See Ward v. National Geographic Society, 208 F. Supp. 2d 429, 445 (S.D.N.Y. 2002) (where Copyright Office has denied registration, "district courts must [nonetheless] make independent determinations of copyright validity in Section 411(a) infringement actions"); Atari Games Corp. v. Oman, 888 F.2d 878, 887 (D.C. Cir. 1989) (Silberman, J., concurring) (applicant whose registration is denied "can gain full judicial review of copyrightability in an infringement action" (emphasis added)); Nimmer on Copyright § 12.11[B][3] ("[t]he most common pattern . . . is for courts adjudicating infringement actions simply to reach their own determinations, without adverting either to the agency's general level of expertise or to the Copyright Office's particular determination via its issuance (or denial) of a certificate").

As Judge Kaplan noted in Ward, an independent determination of copyrightability is consistent with the structure of the 1976 Copyright Act:

> The 1976 Act provides two options for a person whose registration application has been denied by the Copyright Office. First, an applicant may invoke Section 701(e) and commence suit against the Register of Copyrights in an effort to overturn the determination. The sole issue in such an action would be the propriety of the denial of registration, and the district court's standard of review would be deferential – the agency action would be set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
>
> The second option available to an applicant, provided there is an alleged infringement, is to serve the Register of Copyrights with appropriate notice and "institute an action for infringement" under Section 411(a). The plain meaning of the words "action for infringement" indicates that all issues typically raised in an infringement suit, including ownership and validity, are open in a Section 411(a) suit.

6

Ward, 208 F. Supp. 2d 429, 445 (S.D.N.Y. 2002) (quoting 17 U.S.C. §§ 701(e), 411(a); 5 U.S.C.§ 706(2)(A)); see also OddzOn Prods., Inc. v. Oman, 924 F.2d 346, 350 (D.C. Cir. 1991) (finding that "the refusal of the Copyright Office to register [the work at issue] . . . does not constitute an abuse of discretion," but emphasizing that "[w]e do not decide on the copyrightability of the item, and we intimate no opinion on the decision we would reach if the matter came before us in an infringement action").

Accordingly, for purposes of Aqua's Section 411(a) infringement claim, this Court will make an independent determination as to whether Aqua's lighting designs are entitled to copyright protection.[3]

### 2. Copyrightability of Lighting Designs

Hilton argues that Aqua's lighting designs are not entitled to copyright protection because they "are useful articles . . . [and] Aqua [has] failed to identify any separable elements of its light fixtures entitled to copyright protection." (Def. Br. 11)  Aqua contends, however, that

---

[3]  Hilton contends that this Court should not make an independent determination but instead review the Copyright Office's decision under an abuse of discretion standard.  (Def. Br. 18)  The authority Hilton cites for this proposition is not persuasive.  Norris Indus., Inc. v. Int'l Tel. & Tel. Corp., 1981 U.S. Dist. LEXIS 15975, at *3 (N.D. Fla. Aug. 12, 1981) is thirty years old and is premised on the mistaken notion that "a determination of registerability under 17 U.S.C. § 411(a) replaces a mandamus action against the Register under the 1909 Act."  Instead, as Ward explains, it is a Section 701(e) action, and not a 411(a) action, that is the 1976 Act's analogue to the 1909 Act's mandamus petition.  Ward, 208 F. Supp. 2d at 445.  Gemveto Jewelry Co. v. Jeff Cooper Inc., 568 F.Supp. 319 (S.D.N.Y. 1983), vacated on other grounds, 800 F.2d 256, (Fed. Cir. 1986), is likewise nearly thirty years old and was vacated.  The Court will not follow the reasoning of Gemveto here.

While Hilton notes that, in Ward, "the plaintiff . . . had not asked the Court to compel registration, whereas Aqua has asked this Court to do so in connection with this case" (Def. Br. at 18), Aqua's prayer for relief does not change the fact that this is a Section 411(a) infringement action, and not an action against the Copyright Office and its employees under Section 701(e) and the Administrative Procedure Act.  As discussed in Part II(B), to the extent that Aqua seeks relief against the Copyright Office, that request is not properly before this Court and will not be considered.

the creative elements of its light fixtures are both physically and conceptually separable from the fixtures' utilitarian features. (Pltf. Br. 15-17)

The Copyright Act of 1976 affords copyright protection to, inter alia, "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), under the following circumstances:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, and sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. A "useful article" is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." Id.

Accordingly, the question presented by Defendant's motion to dismiss is whether the SAC adequately pleads facts demonstrating that the creative elements of Aqua's lighting designs are separable from the light fixtures' utilitarian elements.

### a. Physical Separability

"Separability comes in two flavors – physical separability and conceptual separability." Eliya, Inc. v. Kohl's Dept. Stores, 2006 WL 2645196, at *11 (S.D.N.Y. Sept. 13, 2006). "[W]hen a component of a useful article can actually be removed from the original item and separately sold, without adversely impacting the article's functionality, that physically separable design element may be copyrighted." Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005); see also Mazer v. Stein, 347 U.S. 201, 202-03 (1954) (copyrighted artistic statue remained protected when it was used as the base of a lamp separate from the "mechanical or utilitarian aspects" of the lamp).

Here, Aqua has not pleaded that any part of its light fixtures "can actually be removed from the original item . . . without adversely impacting the article's functionality."

Chosun, 413 F.3d at 327.  Instead, the SAC simply asserts that "[t]he copyrightable subject matter in these original works is unrelated to, and physically . . . separable from, the utilitarian and functional aspects of the works."  (SAC ¶ 24)  This conclusory statement as to physical separability is not sufficient to survive a motion to dismiss based on lack of copyrightability, however.  Aqua has done no more than "offer[] 'labels and conclusions' [and] 'a formulaic recitation of the elements of a cause of action.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

The record also demonstrates that further amendment on this issue is likely to be futile.  Aqua notes in its brief that its light fixtures' "functional elements include (a) a plate holding the lighting fixture on the ceiling; (b) electrical wiring; (c) rods connecting the fixture to the ceiling plate; and (d) shades and bulbs."  (Pltf. Br. 17)  Aqua then argues that "[t]he functional plate, wiring, and bulb elements could be physically separated as a lighting device that retains its ability to illuminate a room, while the remaining elements continue to evoke the image of a jellyfish or other sea life floating in a particular pattern overhead."  (Id.)  In other words, Aqua claims that the artistically shaped shades are physically separable from the bulbs and wiring and are therefore entitled to copyright protection.

As Chosun makes clear, however, a physically separable element must be capable of being "removed from the original item . . . without adversely impacting the article's functionality."  Chosun, 413 F.3d at 327.  Although Aqua's light fixture may still "illuminate a room" once its decorative shades are removed, a shade is an important functional element of a light fixture.  Accordingly, although removal of the shades would not entirely strip Aqua's light fixture of its functionality, it would certainly "adversely impact[]" that functionality.  In sum, Aqua has not demonstrated – either in its pleadings or through its supporting papers – that the

9

creative elements of its lighting designs are physically separable from the light fixtures' utilitarian aspects.

### b. Conceptual Separability

Aqua claims that the artistic elements of its light fixtures are also conceptually separable from the fixtures' utilitarian elements. (SAC ¶ 24 ("The copyrightable subject matter in these original works is unrelated to, and physically and/or conceptually separable from, the utilitarian and functional aspects of the works.")) The Second Circuit has noted that "if design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements." Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1145 (2d Cir. 1987). Accordingly, when a design choice is "significantly influenced by utilitarian concerns," it is not conceptually separable. Id. at 1146-47. This is true even where the design choice reflects careful aesthetic judgment. "In applying the test of separability, the following are not relevant considerations: 1) the aesthetic value of the design, 2) the fact that the shape could be designed differently, or 3) the amount of work which went into the making of the design." Compendium II, Copyright Office Practices, § 505.05.

Applying these standards, courts in this Circuit decline to find conceptual separability in articles whose shape – although designed to be aesthetically pleasing – is dictated to a large extent by practical considerations. For example, in Brandir, the Second Circuit addressed the copyrightability of a "ribbon-shaped" bicycle rack, the "original design of [which] . . . stemmed from wire sculptures that . . . [were] displayed in [their creator's] home as a means of personal expression." Brandir, 834 F.2d at 1146. Although the bicycle rack had originated as a purely artistic creation, the court found that "[i]n creating the RIBBON Rack, the designer . . . clearly adapted the original aesthetic elements to accommodate and further a utilitarian purpose."

10

Id. at 1147.  As a result, the rack's creative elements were not conceptually separable, even though they were the product of careful aesthetic judgment.  Id.; see also Eliya, Inc., 2006 WL 264519, at *12 (design of a shoe not conceptually separable because "the mere act of aesthetic decisionmaking does not render the result of that decisionmaking conceptually separable"; "for a design element to be conceptually separable, it must be the result of aesthetic decisionmaking that is independent of functional considerations" (emphasis in original)).

"[W]here design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, [however,] conceptual separability exists."  Brandir, 834 F.2d at 1145.  Accordingly, ornamentation on a belt buckle is conceptually separable if it can be worn in its identical form independent of the belt, Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980); and a sculptural rendering of a banana leaf remains conceptually separable when affixed to table and floor lamps.  Sunset Lamp Corp. v. Alsy Corp., 698 F. Supp. 1146, 1151 (S.D.N.Y. 1988).

Here, once again, Aqua has failed to plead what elements of its lighting designs are conceptually separable from the utilitarian aspects of its works.  Aqua merely states that "[t]he copyrightable subject matter in these original works is unrelated to, and physically and/or conceptually separable from, the utilitarian and functional aspects of the works."  (SAC ¶ 24) This conclusory language does not establish any factual basis for Aqua's claim that its lighting designs are entitled to copyright protection, and does not meet the Iqbal/Twombly standard.[4]

---

[4] Aqua argues that "it is not appropriate to analyze separability devoid of the facts that will be elicited as the case goes forward."  (Pltf. Br. 15)  In ruling on a Rule 12(b)(6) motion, however, this Court must consider whether the complaint "'state[s] a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Where a plaintiff, as here, has not set forth a plausible set of facts that would entitle it to relief, the Court must dismiss the complaint.  Such a rule works no injustice here, where the facts pertinent to separability are peculiarly within Aqua's control.

As with physical separability, there is nothing in the record that suggests further amendment could cure the conceptual separability pleading defect. Aqua argues that "[i]f the functional lighting elements, such as wiring and light bulbs, were removed, Aqua's works would remain creative and original." (Pltf. Br. 19) But, as discussed above, that is not the relevant question. Instead, Aqua must plead facts permitting the Court to find that the design represents purely aesthetic choices, as opposed to "a merger of aesthetic and functional considerations." Brandir, 834 F.2d at 1145. Aqua has not pled such facts, and the nature of the design at issue renders it unlikely that such facts exist. It strains belief that the creator of the Stand By and Sunsa designs would have selected a shape for the lamp shades without giving any consideration to the need for illumination. The shape of lighting fixture shades is clearly informed by utilitarian concerns, and the associated creative elements are not conceptually separable.

Because Aqua has failed to plead facts demonstrating that its lighting designs are entitled to copyright protection, its Section 411(a) infringement claim will be dismissed.

### B. Claim for Review of Copyright Office Determination

In addition to seeking damages and injunctive relief for copyright infringement under 17 U.S.C. § 411(a), Aqua asks that this Court "[o]rder the Register of Copyrights to issue copyright registration certificates for Aqua Creations' Stand By and Sunsa Designs that relate back to the application filing dates." (SAC, Prayer for Relief, ¶ c)

As explained in Part II(A), supra, an unsuccessful registration applicant may bring an action for review of the denial under 17 U.S.C. § 701(e), which states that "all actions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act." 17 U.S.C. 701(e) (citing 5 U.S.C. §§ 701 et seq.) The Administrative Procedure Act provides that an "action for judicial review may be brought against the United

States, the agency by its official title, or the appropriate officer," 5 U.S.C. § 703, and states that a reviewing court shall "set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Here, however, Aqua has brought no claim against the Copyright Office, and neither the Copyright Office nor any of its employees is a party to this action. Under these circumstances, this Court has no power to compel the Copyright Office to issue the registration certificates Aqua seeks. To the extent the SAC seeks relief against the Copyright Office, that claim will be dismissed.

### III.    QUANTUM MERUIT

Aqua also brings a quantum meruit claim relating to, inter alia, the sketches and photographs it provided to Hilton during the negotiations, as well as the time it expended in preparing "amended designs and written specifications" for the Hilton design bid. (SAC ¶ 15) Aqua claims that it "reasonably relied on Defendant's implied promise to pay for [its] services when [it] continued to perform and complete its design services during the negotiation period," and that "the Defendant has been unjustly enriched" through its receipt of Aqua's services. (SAC ¶¶ 33-34) Hilton argues that (1) Aqua had no reasonable expectation of payment for its work in preparing its bid; and (2) to the extent that Aqua claims that Hilton has been unjustly enriched by copying its drawings, that claim is preempted by the Copyright Act.

"In order to make out a cause of action in quantum meruit or quasi contract, a plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor;

and (4) the reasonable value of the services." Landcom, Inc. v. Galen-Lyons Joint Landfill Com'n, 259 A.D.2d 967, 968 (4th Dept. 1999).[5]

"Money expended in preparation for eventually performing under an agreement is not compensable in quasi-contract." Rogers v. HSN Direct Joint Venture, 1999 U.S. Dist. LEXIS 12111, at *5 (S.D.N.Y. Aug. 5, 1999); see also Metro Steel Indus. v. Citnalta Constr. Corp., 302 A.D.2d 233, 234 (1st Dept. 2003) ("no expectation of payment" where "plaintiff may have performed preparatory work in anticipation of and to facilitate a successful contract negotiation," but no written contract was finalized); Absher Constr. Corp. v. Colin, 233 A.D.2d 279, 280 (2d Dept. 1996) (when plaintiff "prepared the cost analysis based upon the hope that it would be awarded the contract to perform the construction work," this "was merely preparatory to performance, and therefore could not constitute the basis for restitution based upon unjust enrichment"). In addition, "quantum meruit claims fail where a party cannot reasonably know that services are being performed by the other party with the expectation that additional payment will be made for those services." United Resource Recovery Corp. v. Ramko Venture Mgmt., Inc., 2009 U.S. Dist. LEXIS 77153, at *22-23 (S.D.N.Y. Aug. 28, 2009).

Here, it is clear from the SAC and its exhibits that the time and effort Aqua expended during the bid process was "based upon the hope that it would be awarded the

---

[5] The parties cite New York law in their briefs, and thus have implicitly agreed that New York law governs. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (applying New York law on the basis that the "parties agree [that New York law] governs their contract dispute"); Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying New York law on the grounds that "both parties cite exclusively to New York contract law in their argument"). Moreover, Aqua Creations USA has its principal place of business in New York, and that office was responsible for generating the work that gives rise to this claim. Accordingly, New York "'has the most significant contacts with the matter in dispute.'" (SAC ¶ 2; SAC, Ex. A, at 6) See Auten v. Auten, 308 N.Y. 155 (1954) (quoting Rubin v. Irving Trust Co., 305 N.Y. 288, 305 (1953)).

contract." Absher, 233 A.D.2d at 280.  All of the materials that Aqua provided to Hilton – including the sketches, photographs, and written specifications – were provided during and as part of the effort to obtain the contract.  Aqua has not alleged any facts supporting a claim that it had a reasonable "expectation of compensation" for the work it performed during the negotiation process with Hilton.  Landcom, 259 A.D.2d at 968.  A party, like Aqua, that expends labor and money to "perform[] preparatory work in anticipation of and to facilitate a successful contract negotiation," Metro Steel, 302 A.D.2d at 968, is not entitled to compensation for that preparatory work simply because the contract negotiations proved unsuccessful.

        Because Aqua has not pled facts demonstrating that it had an expectation of compensation for the preparatory work it performed in bidding on the Hilton project, its quantum meruit claim will be dismissed.[6]

---

[6] Given this determination, the Court does not reach Hilton's preemption argument.

## CONCLUSION

Hilton's motion to dismiss the Second Amended Complaint (Dkt. No. 21) is granted.[7] Hilton's motion to strike (Dkt. No. 21) is denied as moot. The Clerk of the Court is directed to terminate both motions and to close this case.

Dated: New York, New York
March 28, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[7] Dismissal is granted without leave to amend. "Once a responsive pleading has been served, 'a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir. 1998) (quoting Fed. R. Civ. P. 15(a); citing Hemphill v. Schott, 141 F.3d 412, 420 (2d Cir. 1998)). Although leave to be amend should be freely granted where justice requires, " a district court may properly deny leave when amendment would be futile." Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc., 129 F.3d 240, 246 (2d Cir.1997)). Here, Aqua has already amended its complaint twice, and despite having been given notice of the defects in its pleading, has not succeeded in curing those defects. For the reasons explained above, it appears that further amendment would be futile. Accordingly, dismissal will be granted without leave to amend. Jones, 166 F.3d at 50.